## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| STEWART T. GUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV0384 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Stewart T. Gunter, brought this action to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Social Security Act (the "Act"). (Docket Entry 1.) The Court has before it the administrative record (cited as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 11, 14). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging a disability onset date of November 22, 2000. (Tr. 63-65, 422-25.) Upon denial both

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

initially and on reconsideration (Tr. 37, 38, 426, 431), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 53). After a hearing at which Plaintiff, his representative, and a vocational expert appeared (Tr. 484-512), the ALJ ruled Plaintiff not disabled under the Act (Tr. 432-44). The Appeals Council remanded for further proceedings. (Tr. 451-52.) The ALJ held another hearing (Tr. 513-16) and again found Plaintiff not disabled (Tr. 14-26). The Appeals Council denied review (Tr. 8-10), such that the ALJ's finding of no disability became the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2005.

2.    [Plaintiff] has not engaged in substantial gainful activity since November 22, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine, depression and a personality disorder (20 CFR 404.1520(c) and 416.920(c)).

.  .  .  .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

.  .  .  .

> 5. . . . [Plaintiff] has the residual functional capacity to engage in medium work activity with additional limitations, including performing only simple, routine, repetitive tasks in a non-production work environment with only occasional personal interaction.

(Tr. 19-21.)

The ALJ then found that Plaintiff no longer could do his past work (Tr. 24), but could "perform a significant number of jobs in the national economy" (Tr. 25). Accordingly, the ALJ ruled that Plaintiff did not have a "disability" under the Act. (Tr. 26.) Plaintiff thereafter instituted this action. (Docket Entry 1.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of our review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based  upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the

"'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past

---

[2] "The [] Act comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

work or (5) any other work." <u>Albright v. Commissioner of the Soc.</u>
<u>Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]

If a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant has no disability. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to do prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<em>e.g.</em>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

**Assignments of Error**

Plaintiff argues that, in formulating the RFC (later utilized to resolve step five against him), the ALJ: (1) improperly weighed the opinions of three doctors (Docket Entry 12 at 3-7); (2) impermissibly adopted only a medium-exertional-level lifting limitation (<u>id.</u> at 7-8); and (3) errantly assessed the credibility of Plaintiff's symptom reporting (<u>id.</u> at 8-9). Defendant contends otherwise and urges that substantial evidence supports the ALJ's finding of no disability. (Docket Entry 15 at 4-18.)

## 1. Doctors' Opinions

Plaintiff challenges the ALJ's consideration of the opinions of Dr. Barbara A. Porter, a treating primary care doctor, Dr. James H. Carter, a treating psychiatrist, and Dr. Safi S. Soliman, a consultative examining physician. (Docket Entry 12 at 3-7.) According to Plaintiff, a treating doctor's opinion "will be given controlling weight and may be disregarded only if there is persuasive contradictory evidence." (<u>Id.</u> at 3 (citing <u>Foster v.</u>

---

[5] A claimant thus can qualify as disabled via two paths through the five-step process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the process appear to gloss over the fact that a finding adverse to a claimant on step three does not terminate the analysis. <u>See</u>, <u>e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986)).) Plaintiff's phrasing of the "treating physician rule," however, no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

The applicable rule generally requires an ALJ to give controlling weight to a treating physician's opinion about a claimant's impairment(s), on the ground that treating physicians

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[6] The rule also recognizes, however, that not all treating physician opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii). Further, a treating physician's opinion controls _only_ if well-supported by medical signs and laboratory findings _and_ consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). Plaintiff's assertion that "the opinion of a treating physician when accompanied by clinical and diagnostic techniques is entitled to controlling weight" (Docket Entry 12 at 3), ignores the regulatory requirement that, for a treating physician's opinion to receive controlling weight, it not only must rest upon clinical evidence, but also must cohere with other substantial evidence of record. See Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence _or_ if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." (emphasis added)). Finally, opinions regarding issues reserved to the Commissioner do not receive controlling weight. 20 C.F.R. §§ 404.1527(e), 416.927(e).

---

[6] Effective March 26, 2012, a regulatory change recodified the treating physician rule, but did not alter its substantive content. See 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action preceded that non-substantive change, this Recommendation cites the prior codification.

### a. Dr. Porter's Opinion

According to Plaintiff, "the ALJ failed to properly evaluate Dr. Porter's opinion." (Docket Entry 12 at 4.) The record does not support that contention. Specifically, in formulating Plaintiff's RFC, the ALJ observed that, following an examination on July 10, 2001 (see Tr. 339), Dr. Porter referenced Plaintiff's "chronic[] weak[ness] secondary to neuropathy and proximal muscle weakness" and opined that Plaintiff could not "stand for any duration greater than ten minutes and could only walk so far as from room to room." (Tr. 22 (citing Tr. 309); see also Tr. 342 (setting forth Dr. Porter's statement, after her first visit with Plaintiff on April 9, 2001, that he "appears to [suffer] peripheral neuropathy and proximal muscle weakness" as an after-effect of alcohol-related liver disease).) The ALJ, however, deemed that "assessment . . . not supported by objective clinical findings and . . . conclusory." (Tr. 22.) In that regard, the ALJ cited the absence of "definitive testing . . . to support a diagnosis of alcoholic neuropathy, and repeat[ed] examinations show[ing] [Plaintiff] has a normal gait and stance, does not walk with an assistive device, has normal coordination, and has normal sensation and motor strength." (Id.)

Plaintiff's challenge to that decision-making does not dispute that the record both lacks evidence of testing substantiating a diagnosis of alcoholic neuropathy and contains evidence

consistently documenting Plaintiff's ability to walk normally (including from coordination and strength perspectives). (See Docket Entry 12 at 3-4.) Instead, as clinical evidence supporting Dr. Porter's opinions, Plaintiff cites only that, on April 9, 2001, Dr. Porter "noted that [Plaintiff] was unable to stand from a sitting position without using his hands for support." (Id. at 4.) These circumstances do not establish reversible error.

An ALJ must give "good reasons" for discounting a treating physician's opinion by applying the factors set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d). "[T]he duty of explanation will be satisfied when the ALJ presents '[a reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

Here, the ALJ adequately identified valid grounds (not contested by Plaintiff) for discounting Dr. Porter's opinions and

any failure by the ALJ to explicitly discuss Dr. Porter's one-time observation of Plaintiff's inability to stand without using his hands for support represents, at most, an immaterial oversight. As detailed above, the ALJ expressly considered Dr. Porter's opinions, before explaining how the absence from the record of specific forms of evidence and the presence in the record of other forms of evidence undermined Dr. Porter's conclusions. Plaintiff's assignment of error on this point thus lacks merit.

### b. Dr. Carter's Opinion

Plaintiff also asserts that the ALJ failed to properly address statements by Dr. Carter that Plaintiff suffered from cognitive impairment and that his mental condition rendered him "unable to pursue or sustain competitive employment." (Docket Entry 12 at 4 (citing Tr. 267, 359).) As an initial matter, Dr. Carter's statement that Plaintiff lacked the capacity for competitive employment could not receive controlling weight due to the reservation of that ultimate question to the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e). Further, the ALJ expressly considered Dr. Carter's conclusion in that regard, but declined to afford it "great weight." (Tr. 22-23.) As grounds for that determination, the ALJ noted several specific inconsistencies between Dr. Carter's opinion that Plaintiff's mental condition effectively precluded him from participating in the employment marketplace and Dr. Carter's own treatment notes, as follows:

> [R]eports of clinical examinations by Dr. Carter show
> [Plaintiff's] depression can be successfully controlled
> with medication as examinations show [Plaintiff] has not
> exhibited psychotic features, has not shown signs of
> homicidal or suicidal ideations, does not have problems
> with his memory and judgment and does not have sleep or
> appetite disturbances when he takes his medications as
> prescribed. Repeat examinations show [Plaintiff] has not
> been in emotional distress and that improvement was
> reported with medication.

(Tr. 23.) The ALJ also observed that Dr. Carter's assignment to
Plaintiff of a Global Assessment of Functioning ("GAF") score of 62
contradicted the simultaneous conclusory report that Plaintiff
could not function in a workplace. (Id.)[7] These considerations
led the ALJ to conclude that Dr. Carter's own clinical observations
"do not support a finding of a complete inability to work." (Id.)[8]

Substantial evidence supports that conclusion. First, Dr.
Carter's treatment notes consistently reflect that examinations of
Plaintiff revealed coherent thought processes, no evidence of
hallucinations or delusions, intact judgment, no psychotic
features, clear and spontaneous speech, and no difficulties with
memory or concentration. (See Tr. 317-18, 322, 327, 357, 360, 368,

---

[7] GAF provides "a standard measurement of an individual's overall functioning
level 'with respect only to psychological, social, and occupational
functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting
American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders
32 (4th ed. 1994)). A GAF score between 61-70 indicates "[s]ome mild symptoms
. . . OR some difficulty in social, occupational, or school functioning . . . but
generally functioning pretty well. . . ." American Psychiatric Ass'n, Diagnostic
and Statistical Manual of Mental Disorders 34 (4th ed. rev. 2000) ("DSM-IV-TR")
(emphasis added).

[8] The ALJ considered whether the record supported the view that Plaintiff
suffered from a complete inability to work because Dr. Carter expressed that
opinion, not (as suggested by Plaintiff (see Docket Entry 12 at 5)) because the
ALJ misunderstood the disability standard (i.e., that, in certain contexts,
individuals with some capacity for work still could qualify as disabled).

372, 375, 377, 387, 389, 393, 397.)    Additionally, on several occasions Dr. Carter described Plaintiff as stable or making progress.  (See Tr. 357, 360, 372, 387, 397.)  Plaintiff points out that Dr. Carter once referred to Plaintiff as cognitively impaired. (Docket Entry 12 at 4 (citing (Tr. 359).)  However, even in that instance, Dr. Carter did not identify the level of any such impairment.  (See Tr. 359.)  Moreover, in the other instances where Dr. Carter mentioned Plaintiff's cognitive ability, he reported no such impairment.  (See Tr. 327, 329, 387, 397.)  In sum, the record provides no grounds for relief related to Dr. Carter's opinion.

### c.  Dr. Soliman's Opinion

In addition, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Soliman, a consulting physician, that Plaintiff "could lift no more than 30 pounds occasionally and could stand and walk no more than four hours in an eight hour day." (Docket Entry 12 at 6.)[9]  Upon examination, Dr. Soliman found Plaintiff able to sit comfortably on the examination table, as well as capable of getting on and off the examination table and taking his shoes off, all without difficulty.  (Tr. 269.)  Dr. Soliman

---

[9] As a consulting physician who examined, but did not treat, Plaintiff Dr. Soliman's opinions cannot, as a general matter, qualify for controlling weight in the manner that a treating physician's opinions might.  See Koonce v. Apfel, No. 98-1144, 166 F.3d 1209 (table), 1999 WL 7864, at *3 (4th Cir. 1999) (unpublished).  Moreover, although "an examining physician's opinion is generally accorded more weight than a non-examiner's opinion, if an opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Harder v. Commissioner of Soc. Sec., No. 6:12CV69, 2014 WL 534020, at *4 (W.D. Va. Feb. 10, 2014) (unpublished) (internal quotation marks omitted).

further described Plaintiff's gait as normal and noted the absence of any assistive device. (Tr. 270.) Dr. Soliman's examination also confirmed that Plaintiff had normal range of motion in his back and extremities, no muscle spasms or edema, and normal bilateral motor strength. (Tr. 270, 272-73.) Dr. Soliman then concluded:

> Based on the objective evidence of my examination, [Plaintiff] could be expected to stand and walk for four hours in an eight-hour workday with frequent breaks because of the bilateral leg weakness. [Plaintiff] could be expected to sit with no restrictions in an eight-hour workday. He does not need any assistive device. He can carry and lift up to 30 pounds occasionally.

(Tr. 270.)

Dr. Soliman's foregoing determination fails to identify what, if any, clinical evidence from the examination indicated that Plaintiff suffered from any leg weakness, much less such weakness as would have supported the standing and walking restrictions Dr. Soliman proposed. (See Tr. 269-71.) Nor, in connection with this assignment of error, did Plaintiff point to any such clinical evidence in Dr. Soliman's report. (See Docket Entry 12 at 6-7.) Moreover, as noted above, in discounting Dr. Porter's opinion that Plaintiff lacked the capacity for any extended walking or standing, the ALJ expressly found (and Plaintiff failed to contest) that "repeat[ed] examinations show[ed] [Plaintiff] has a normal gait and stance, does not walk with an assistive devise, has normal coordination, and has normal sensation and motor strength." (Tr.

22.)  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590.  Accordingly, any failure by the ALJ to make specific reference to Dr. Soliman's opinion about standing or walking restrictions represents, at most, harmless error.  See, e.g., Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

Additionally, the ALJ expressly determined that Dr. Soliman's opinion regarding Plaintiff's lifting ability should receive limited weight because it did not match Dr. Soliman's own objective clinical findings and because, "[w]ithout positive findings on examination, the limitation in lifting only 30 pounds occasionally is not supported by the evidence."  (Tr. 22.)  In other words, consistent with precedent, the ALJ declined to lend significant weight to Dr. Soliman's proposed lifting limitation, because it was "not supported by clinical evidence [and was] inconsistent with other substantial evidence," Craig, 76 F.3d at 590.  Again, Plaintiff failed to cite evidence that would require the Court to overturn that finding by the ALJ.  (See Docket Entry 12 at 6-7.)

## 2. Lifting Limitation

Plaintiff's next assignment of error contends that the ALJ failed to justify the inclusion within the RFC of a finding that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. (Docket Entry 12 at 7.) According to Plaintiff, "[t]he only weight limitation given by an acceptable medical source . . . <u>cited</u> in [the] opinion was the 30 pound lifting restriction given by Dr. Soliman. Other than that, [the ALJ] <u>cites</u> no other restrictions by medical sources supporting the stated [RFC]." (<u>Id.</u> at 7-8 (emphasis added).)

The RFC measures the most a claimant can still do despite any physical and mental limitations. <u>Hines</u>, 453 F.3d at 562. In that regard, the regulations require an assessment of how a claimant's exertional limitations relate to the ability to perform a given level of work (i.e., sedentary, light, medium, heavy, or very heavy). 20 C.F.R. §§ 404.1567, 416.967. Medium work requires the capacity to lift up to 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. §§ 404.1567(c), 416.967(c). Here, the ALJ determined that Plaintiff could do "'medium' work activity with additional limitations, including performing only simple, routine, repetitive tasks in a non-production work environment with only occasional personal interaction." (Tr. 21.)

Plaintiff does not argue that the record lacks medical evidence supporting the RFC's medium-exertional-level lifting

limitation; instead, he asserts only that the ALJ failed adequately to <u>cite</u> such evidence. (<u>See</u> Docket Entry 12 at 7-8.) In fact, the ALJ's RFC finding matches the RFC assessments of three state agency non-examining physicians, Drs. William Roble, Robert Pyle, and Robert Gardner, each of whom reviewed the medical evidence of record and concluded Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently. (<u>See</u> Tr. 213-20, 240-47, 297-304.) Moreover, apart from the opinion of Dr. Soliman, which (for reasons set forth above) the ALJ reasonably discounted, Plaintiff identifies nothing in the record that would call into question the adoption of a medium-exertional lifting limit. (<u>See</u> Docket Entry 12 at 7-8.) Under these circumstances, "[t]he opinion of [the] state agency physician[s] constitutes substantial evidence in support of the ALJ's decision." <u>Atwood v. Astrue</u>, No. 5:11CV2-RLV-DSC, 2011 WL 7938408, at *4 (W.D.N.C. Sept. 28, 2011) (unpublished), <u>recommendation adopted</u>, 2012 WL 1858764 (W.D.N.C. May 22, 2012) (unpublished); <u>see also</u> <u>Mullis v. Colvin</u>, No. 1:11CV22, 2014 WL 575722, at *6 (M.D.N.C. Feb. 11, 2014) (Webster, M.J.) ("[E]vidence from non-examining physicians—such as the state agency consultants in this case—can constitute substantial evidence to support a finding of non-disability to the extent they are consistent with the record.").

Plaintiff's position thus collapses into the claim that the omission from the ALJ's decision of explicit reference to the

opinions of Drs. Roble, Pyle and Gardner requires reversal. The Court should reject that contention. See, e.g., Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

## 3. Symptom Credibility

As a final matter, Plaintiff asserts that the ALJ improperly assessed the credibility of Plaintiff's subjective complaints of pain and other limiting symptoms. (Docket Entry 12 at 8.) Plaintiff specifically contends the ALJ failed to adequately address Plaintiff's testimony "that he tires very easily despite efforts to try to increase his endurance" (id. at 9 (citing Tr. 498)), that he endures "pain in his arms and the back of his neck" (id. (citing Tr. 499)), "that it hurts to pick up objects weighing as little as 5 pounds" (id. (citing Tr. 501)), "that he doesn't have any activities outside of his home (id. (citing Tr. 506)), and "that he has significant difficulties with concentration" (id. (citing Tr. 505)). As a result, Plaintiff states that "the decision should be remanded for further hearing." Id.

The Social Security Administration's Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), as applied by the Fourth Circuit in Craig, 76 F.3d

at 594-95, provides a two-part test for evaluating a claimant's statement about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. §§ 404.1529(b) & 416.929(b)). The ALJ ruled on Plaintiff's favor on that issue. (Tr. 23-24.)

At step two of the process, the ALJ must evaluate the alleged intensity and persistence of the claimant's reported symptoms and the extent of the resulting impact on the claimant's ability to work. Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(1) & 416.929(c)(1)). In making this evaluation, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, the ALJ made the following findings regarding Plaintiff's credibility:

> [Plaintiff's] allegations of pain are not considered fully credible as he has not sought continuous treatment with complaints of neck pain and has not been prescribed extensive pain medication. If [Plaintiff] were experiencing severe pain, it is reasonable to assume he

would continue to seek treatment complaining of such pain
and would be prescribed appropriate pain medication.
[Plaintiff] is only taking Tylenol with codeine for his
complaints of neck pain.  While there is mention in the
record that [he] has alleged he cannot afford medication,
the evidence does not show he has sought alternative
methods of obtaining such medication, including samples
from physicians.  No surgical intervention has been
recommended for [Plaintiff] and [he] has not been
referred for evaluation by an orthopedist or neurological
surgeon.  Neither are [Plaintiff's] daily activities
severely limited as a result of pain as he reported he
helps with housework and cleaning, goes shopping, drives
and operates a computer for personal use.  For these
reasons, [Plaintiff's] subjective allegations are not
considered fully credible.

(Tr. 24.)

The entirety of Plaintiff's challenge to the ALJ's foregoing

analysis appears as follows:  "[The ALJ] listed several types of

treatments that are indicative of a person with severe pain and

stated that [Plaintiff] did not receive these treatments.  [The

ALJ] then chastise[d] [Plaintiff] for not being able to receive

more charity care by finding that his testimony was not credible."

(Docket Entry 12 at 9.)  A fair reading of the ALJ's above-quoted

credibility determination confirms that the ALJ did not decide the

issue in the manner Plaintiff suggests.  To the contrary, the ALJ

focused on the absence of evidence both that Plaintiff consistently

sought treatment for pain and that any medical professional

prescribed significant pain medication to Plaintiff or referred him

to a specialist for further treatment, as well as the presence of

evidence that Plaintiff engaged in daily activities inconsistent

with disabling pain.  (See Tr. 24.)  Plaintiff has failed to

contest the foundation in the record for those findings and to cite any authority suggesting that such findings represent insufficient grounds for an adverse credibility determination. (See Docket Entry 12 at 8-9.) This assignment of error thus falls short. See Basu-Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at *6 (M.D.N.C. Aug. 8, 2008) (unpublished) (recommendation of Eliason, M.J., adopted by Schroeder, J.) (stating that credibility "determinations will be upheld as long as there is some support in the record for the ALJ's position and it is not patently wrong"); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)).

## CONCLUSION

Plaintiff has established no basis for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 30, 2014